# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Lausteveion Johnson,

    Plaintiff

v.

Luis Lopez, et al.,

    Defendants

Case No.: 2:15-cv-00884-JAD-NJK

**Order on Motions to Dismiss, for
Summary Judgment, and Related Relief,
and for a Mandatory Settlement
Conference**

[ECF Nos. 49, 55, 60, 66, 72, 78,
82–85, 90, 103]

Incarcerated pro se plaintiff Lausteveion Johnson sues several Nevada-state prison officials and the director of the Nevada Department of Corrections (NDOC) under 42 U.S.C. § 1983, alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA).[1] Johnson's operative pleading is his second-amended complaint, which I granted him leave to file because it provided more clarity than his previous one.[2] The parties have filed a host of motions about Johnson's four claims for relief. Defendants move to dismiss the claims against Nissel Young and Jo Gentry, to dismiss Johnson's official-capacity claims, for leave to file four separate motions for partial summary judgment, and for summary judgment on each claim.[3] Johnson moves for summary judgment on all of his claims, to present oral argument on the parties' dispositive motions, and to quash the information or demurrer that led to his conviction and incarceration.[4]

I rule on all of these motions in this order, and the upshot is that Johnson can proceed only on: (Count 1) the claim that he was denied adequate edible food by corrections officers

---

[1] ECF No. 48 (second amended complaint).

[2] ECF No. 47.

[3] ECF Nos. 49, 55, 72, 82–85.

[4] ECF Nos. 60, 66, 78, 90, 103.

Andrew Silverstein and Brandon Lawrence in their individual and official capacities; and (Count II) the claim that he was denied his Eid al-Fitr feast in 2014 and his request for injunctive relief for personal possession of scented oils and pre-dawn Ramadan meals.

## Discussion

**A.    Nissell Young's motion to dismiss [ECF No. 49]**

Defendants argue that I should dismiss all claims against Nissel Young because I already dismissed those claims with prejudice in an order screening Johnson's prior pleading.[5]  When I screened Johnson's original complaint, I found that "he states a colorable claim for denial of access to the courts against Baker, but not against Young because he provides no allegations implicating Young."[6]  So, I dismissed the claim against Young without prejudice, with leave to amend.[7]

Johnson amended his pleading and again alleged that claim against Young.  In screening Johnson's first-amended complaint, I found that it still lacked any specific allegations or identifying information about Young or his contribution to Johnson's alleged constitutional deprivation.[8]  I therefore dismissed all claims against Young with prejudice because further amendment would be futile.[9]  Despite my order, Johnson re-alleges this claim against Young in his second-amended complaint.[10]  Johnson's allegations about Young are still defective, and I have already dismissed the claims against this defendant with prejudice.  I therefore construe the defendants' dismissal motion as one to strike under FRCP 12(f), grant it, and strike the allegations about Young from Johnson's second-amended complaint.

---

[5] ECF No. 49.

[6] ECF No. 7 at 11.

[7] *Id.* at 14.

[8] ECF No. 11 at 12–13.

[9] *Id.*

[10] ECF No. 48 at 8.

**B.     Motion to dismiss all official-capacity claims and parts of Count I [ECF No. 55]**

Johnson names several defendants who are all employees or officials of the NDOC or prisons that are operated by that state agency: the Southern Nevada Correctional Center (SNCC), the Northern Nevada Correctional Center (NNCC), the Ely State Prison (ESP), and the High Desert State Prison (HDSP).[11]  Johnson sues each defendant in his or her individual and official capacities.[12]  Defendants move to dismiss Johnson's official-capacity claims.[13]

The Supreme Court held in *Will v. Michigan Department of State Police* that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983 . . . ."[14]  But, the Court explained, "official-capacity actions for prospective relief are not treated as actions against the State[,]" so a state official sued in his or her official capacity for injunctive relief "would be a person under § 1983 . . . ."[15]  Because all of the defendants are officials or employees of the State of Nevada, none of them are suable "persons" under 42 U.S.C. § 1983 in their official capacities for damages.  It is not clear from Johnson's second-amended complaint whether he seeks damages, injunctive relief, or both under his official-capacity claims.  Johnson responds that his official-capacity claims are limited to seeking injunctive relief.[16]  To ensure a clear record on this issue, I grant the defendants' motion to dismiss in part: Johnson's official-capacity claims are limited to injunctive relief.

---

[11] ECF No. 48 at 2–5.

[12] *Id.*

[13] ECF No. 55.  Defendants also move to dismiss the part of Count II alleging that warden Jo Gentry violated Johnson's rights under the First Amendment and RLUIPA when she allegedly prevented him from purchasing and possessing scented prayer oil.  *Id.*  This is the only claim that Johnson alleges against Gentry.  *See* ECF No. 48.  Defendants ask me to convert this part of their dismissal motion into one for summary judgment, ECF No. 55, but they also move separately for partial summary judgment on Count II.  ECF No. 84.  So, I address defendants' arguments about Gentry below in the context of their motion for partial summary judgment on Count II.

[14] *Will v. Mich Dept. of St. Police*, 491 U.S. 58, 71 (1989).

[15] *Id.* at 71 n.10.

[16] ECF No. 59 at 5.

Defendants also move to dismiss the claim under Count I that they violated Johnson's Eighth Amendment rights by putting hair in his food and refusing to give him low-sodium-diet food. In screening Johnson's original complaint, I found that these allegations were not sufficiently pled, so I dismissed them without prejudice and with leave to amend.[17] Johnson re-pled these violations in his first-amended complaint, but his allegations were still deficient, so I dismissed them with prejudice because I found that further amendment would be futile.[18] Despite my order, Johnson re-alleges these violations in his second-amended complaint.[19] Johnson's allegations are still defective, and I already dismissed this part of his Eighth Amendment claim with prejudice. I therefore construe this part of the defendants' dismissal motion as one to strike under FRCP 12(f), grant it, and strike the hair-in-food and low-sodium-diet food allegations from Johnson's second-amended complaint.

**C.     Motion to quash information or demurrer [ECF No. 66]**

Johnson moves to quash the information or demurrer that his state-court conviction is based on, arguing that the state court lacked subject-matter jurisdiction and the statutes he was convicted under are unconstitutional.[20] He asks me to set aside or quash the information that led to his conviction, or to reduce his sentence to "time served."[21] Johnson thus challenges the fact or duration of his confinement and seeks the relief of immediate release. The Supreme Court held in *Preiser v. Rodriguez* that a prisoner's "sole federal remedy" for this type of challenge "is a writ of habeas corpus."[22] Johnson cannot obtain the remedy he seeks by filing a motion in this case, so I deny the motion to quash.

---

[17] ECF No. 7.

[18] ECF No. 11.

[19] ECF No. 48 at 6–7.

[20] ECF No. 66.

[21] *Id.* at 4.

[22] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

**D. Motion for leave to file excess pages [ECF No. 72]**

Defendants move for leave to file four motions for partial summary judgment (one for each of Johnson's claims) instead of a single motion, arguing that it will be easier for the court and parties to follow the arguments if they are separated by count. I agree and, thus, grant the defendants leave to file excess pages.

**E. Motion for Oral Argument [ECF No. 103]**

Johnson asks me to set the parties' dispositive motions on for hearing so that he can present oral argument. I find that the matters set forth in the parties' dispositive motions are suitable for disposition without oral argument, so I deny his motion.[23]

**F. Motions for Summary Judgment**

**1. Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[25] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[26]

If the moving party satisfies Rule 56 of the Federal Rules of Civil Procedure by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for

---

[23] *See* L.R. 78-1 (authorizing this court to consider and decide motions with or without a hearing).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[25] *Kaiser Cement Corp. v. Fisbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[26] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

trial."[27]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[28]

### 2. Qualified-immunity defense

Defendants argue that they are entitled to qualified immunity on Counts II, V, and VI.[29] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the challenged conduct."[30]  The Supreme Court instructs that "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."[31]  "Failing at either one will negate [a § 1983 plaintiff's] eligibility to recover damages" from an official.[32]

"The plaintiff in a § 1983 action bears the burden of proving that the right allegedly violated was clearly established at the time of the official's allegedly impermissible conduct."[33] The Supreme Court has repeatedly instructed that "'clearly established law' should not be defined 'at a high level of generality.'"[34]  An official's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that

---

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[28] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2003) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[29] ECF Nos. 82–84.

[30] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[31] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[32] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).

[33] *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

[34] *White v. Pauly*, —U.S.—, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742).

every reasonable official would have understood that what he is doing violates that right."[35]  The plaintiff is not required to provide "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[36]  "What is necessary[,] absent controlling authority[,]" is "a robust 'consensus of cases of persuasive authority.'"[37]  "[T]he dispositive question is whether the violative nature of the defendants' *particular* conduct is clearly established."[38]  "Moreover, this inquiry must be undertaken in light of the *specific context* of the case, not as a broad general proposition."[39]  "In a nutshell, according to the Supreme Court, state officials are entitled to qualified immunity so long as none of our precedents squarely governs the facts here, meaning that we cannot say that only someone plainly incompetent or who knowingly violate[s] the law would have . . . acted as [the officials] did."[40]

### a.    Count II: First Amendment and RLUIPA

Johnson alleges that the defendants violated the First Amendment and the RLUIPA when they: (1) refused to allow him to possess scented oil; (2) delivered his Ramadan meals in 2014 before sunrise but not before dawn; and (3) failed to deliver his Eid al-Fitr feast at the end of Ramadan in 2014.  I don't address whether the defendants are entitled to qualified immunity for the third alleged violation because they don't mention it in their motion.  I find that whether defendants are entitled to qualified immunity for the second alleged violation requires little discussion because, as the Ninth Circuit explained to an Arizona state prisoner in 2015, "[c]ontrary to Wilson's contentions, the law was not sufficiently clear that a reasonable official would understand [that] he was required to provide a predawn meal, rather than a pre-sunrise

---

[35] *al-Kidd*, 563 U.S. at 741 (quotation marks and brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[36] *Id.*

[37] *Id.* at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

[38] *Hamby*, 821 F.3d at 1091 (quotation marks and brackets omitted) (quoting *Mullenix v. Luna*, —U.S.—, 136 S. Ct. 305, 308 (2015)).

[39] *Id.* (quotation marks omitted) (quoting *Mullenix*, 136 S.Ct. at 308).

[40] *Id.* at 1091 (quotation marks and quoted references omitted) (brackets in the original).

meal, during Ramadan."[41]  This leaves the question of whether the defendants are entitled to qualified immunity for the alleged scented-oil violation.  I address only the second prong of the test—whether the allegedly violated right was clearly established—because it is dispositive here.

Johnson testified that he is a devout Muslim, and that use of scented oil for five daily prayers and the Friday congregational prayer is a tenant of his faith.[42]  He says that unscented oils have "no Islamic significance."[43]  Johnson claims that he used to purchase and possess scented oil for personal and group religious use, but that, since 2010, all of his requests for scented oil have been denied, as were his grievances about the denials.[44]  Johnson invariably refers to the oil he wants as "Muslim Scented Prayer Oil" and "Islamic scented prayer oil."  It is not clear from his complaint what quality or qualities that oil must possess, but he testifies that the oil must be scented, approved by Islamic vendors, and blessed by Islamic Imams.[45]

The NDOC enacted a policy in 2009 limiting the oils that prisoners and faith groups could possess as personal or religious property.  The only oil permitted under the new policy was unscented mineral oil (baby oil), which could be purchased at the prison canteens.[46]  "No inmates were permitted to possess scented oils as personal property or religious property" under this policy.[47]  Warden Dwight Neven explains that the NDOC enacted this policy for many reasons, including because scented oils: (1) "are flammable under the right conditions" and, thus, constitute a danger to prisoners and staff; (2) "can be used to mask the scent of drugs and other types of contraband"; (3) "have been used to create contraband inks, tattoo inks, and also inmate made alcohol[ ] known as 'pruno'"; (4) can harm prisoners who have "allergies"; and (5) can be

---

[41] *Wilson v. Ryan*, 604 Fed. Appx. 635 (9th Cir. May 29, 2015) (unpublished).

[42] ECF No. 82-5 at 16.

[43] *Id.*

[44] *See, e.g.,* ECF No. 82-5 at 25–27.

[45] ECF No. 82-5 at 17.

[46] *See* ECF No. 83-1 at 6.

[47] *See, e.g.,* ECF No. 83-13 at 3, ¶ 10; ECF No. 83-6 at 4, ¶ 15.

used "for illegal bartering."[48]  According to Neven, the NDOC's prior policy of permitting prisoners to possess scented oils caused significant problems for prisoners, staff, the mail room, and administrators because the prisons received "numerous packages sent to inmates from outside persons that contained scented oils and perfumes."[49]  Those incoming packages required pre-authorization by the prison, staff, and caseworkers.[50]  "[I]t was incumbent upon the staff to test any oil to determine that the oil [was] what it [was] claimed to have been."[51]  Staff had to "determine if the oil [was] [a] potential danger to other inmates" and if it was "tainted by an unknown source" before allowing the prisoner to take possession of it.[52]  When outside oils were found to be "unsafe, tainted, or unapproved," the "NDOC [had to] return the packages and undertake the cost and time to do so."[53]  Neven explains that "HDSP and other NDOC facilities" "tried alternative methods of allowing inmates to possess scented oil/perfume, and based upon the[ir] common experiences[,] the Religious Review Panel . . . formulated the . . . [2009] policy" prohibiting all oils except for unscented mineral oil.[54]

So, the inquiry for the second prong is: was it clearly established in 2015[55] that the First Amendment or the RLUIPA prohibited the defendants from denying prisoners the ability to have scented oils under a policy that was created in light of the concerns and issues identified by Neven and after prison officials tried alternative methods and consulted with the Religious

---

[48] ECF No. 83-4 at 3–5.

[49] *Id.* at 4.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at 5.

[54] *Id.*

[55] Johnson does not plead when he asked for and was refused scented oils.  He testifies that his requests started to be denied in 2010, but there is no evidence that he timely grieved that issue or exhausted his administrative remedies then.  The grievance logs provided by the defendants show that Johnson grieved this issue on May 3, 2015, and his grievance was denied at the second level on November 5, 2015.

Review Panel.[56]  Johnson identifies two cases that he believes show that it was clearly

established in 2015 that defendants' conduct violated the First Amendment and RLUIPA.  The

first case is *Munir v. Scott*, which was decided by the U.S. District Court for the Eastern District

of Michigan in 1992.[57]  Johnson's reliance on *Muir* is misplaced for several reasons.  First, that

case concerns a total ban on the possession of "religious oil" or "prayer oil," but the district court

did not define those oils or clearly identify what qualities an oil needed to possess in order to

qualify as such.  Second, the district court defined the clearly established law at too high a level

of generality.[58]  Finally, and most importantly, the Sixth Circuit reversed the district court's

grant of summary judgment in favor of the prisoners on the qualified-immunity issue and

remanded for further proceedings because it found that the prison officials had "presented

evidence that the ban was related to legitimate penological concerns and, therefore, that a

reasonable official could have believed that the ban did not violate plaintiffs' constitutional

rights."[59]

Johnson's second case, *Baltoski v. Petorius*, concerns a screening order from the U.S.

District Court for the District of Indiana in 2003.[60]  His reliance on *Baltoski* is misplaced because

that court did not truly analyze either prong of the qualified-immunity test.  It also defined the

generally established law at too high a level of generality.[61]  Finally, because it is merely a

---

[56] *See Mullenix*, 136 S.Ct. at 308 (quotation marks and quoted references omitted) (explaining that "[t]he dispositive question is whether the violative nature of [the] *particular* conduct is clearly established[,]" and the "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition").

[57] *Munir v. Scott*, 792 F. Supp. 1472 (E.D. Mich. 1992), *rev'd* by 12 F.3d 213 (6th Cir. Nov. 10, 1993) (unpublished).

[58] *Id.* at 1480 (quotation marks and quoted reference omitted) (concluding that plaintiffs "have demonstrated that it was clearly established, by decisions of the Sixth Circuit, as of the date of defendant Scott's total ban, that when an inmate's religious freedom is at stake, corrections officials may adopt regulations [that] are reasonably and substantially justified by official concern for internal security and inmate discipline").

[59] *Munir v. Scott*, 12 F.3d 213, at *2.

[60] *Baltoski v. Petorius*, 291 F. Supp. 2d 807, 809 (N.D. Ind. 2003).

[61] *See id.* at 810 (discussing generally that prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state").

screening order, the specific factual context of the alleged conduct is unclear and one-sided—coming only from the plaintiff because the prison officials had not yet been served.[62]

Neither of Johnson's cases squarely governs this one, but the case that defendants cite, *Chernetsky v. State of Nevada*,[63] comes close. The *Chernetsky* case is from this district, concerns the same NDOC policy at issue here, and has been thrice appealed to the Ninth Circuit. Relevant here is the district court's decision that prison officials were entitled to qualified immunity on Chernetsky's claims that their conduct in promulgating this policy violated his rights under the RLUIPA.[64] Chernetsky appealed, and the Ninth Circuit affirmed the qualified-immunity decision, explaining that the district court "properly determined that the named individual defendants were entitled to qualified immunity because Chernetsky failed to demonstrate that his rights to relief under RLUIPA were clearly established between 2004 and 2006."[65] The only material difference between *Chernetsky* and this case is that these defendants' violations purportedly occurred in 2015. But there has been no "controlling authority" or even "a robust consensus of cases of persuasive authority" since the Ninth Circuit's affirmance that squarely governs the conduct and context of this case. So, I find that the defendants are entitled to qualified immunity on the scented-oil and pre-dawn–Ramadan-meal claims in Count II.

### b. Count V: First and Fourteenth Amendment access to courts

Johnson alleges that ESP warden Renee Baker violated the First and Fourteenth Amendments by inadequately stocking the ESP's law library and providing inadequate access to it. The evidence shows that Johnson was in disciplinary segregation during the relevant time period for this claim (2013–14).[66] The ESP has a policy that prohibits prisoners on disciplinary

---

[62] *See id.* at 811 (directing the marshals service "to effect service of process on" the official).

[63] *Chernetsky v. St. of Nev.*, 2007 WL 9677057 (D. Nev. July 13, 2007), *aff'd in part, vacated in part by* 389 Fed. Appx. 709 (9th Cir. July 29, 2010) (unpublished).

[64] *Id.* at *10–11.

[65] *Chernetsky*, 389 Fed. Appx. 709, at *1.

[66] ECF No. 82-4 at 3.

segregation from having physical access to the law library.[67]  This policy is designed to address staffing and security concerns, including issues that can arise when prisoners of different classifications intermingle.[68]  Instead of physically accessing the law library, segregated prisoners can request books, legal materials, and supplies using a form, and the requested materials are delivered to the prisoner.[69]  Segregated prisoners are allowed to keep checked out legal materials for ten days at a time and can request extensions.[70]  Johnson testified about how the procedure works in real life: "you'll write down a specific book or you'll generalize the type of book that you're looking for and it will state whether or not they have that information[,] forms[,] or books or we don't know what you're talking about or they don't respond."[71]  Defendants provide evidence to show that Johnson requested and received legal books and Lexis Nexis legal research during the relevant time period.[72]  According to the log produced by ESP, Johnson checked out 205 legal items during this time.[73]

The inquiry for the second prong of qualified immunity is: was it clearly established in 2013 that the First and Fourteenth Amendments prohibited prison officials from denying segregated prisoners physical access to the law library when those prisoners had the ability to request and check out legal books and research from the library instead.  After reviewing the cases cited by both sides and surveying the law on this issue, it appears that "'this is an area in which the result depends very much on the facts of each case . . . .'"[74]  Because I have not

---

[67] *Id.*

[68] *Id.* at 4.

[69] *Id.* at 3.

[70] ECF No. 82-10 at 3–4.

[71] ECF No. 82-5 at 23.

[72] ECF No. 82-4 at 4; ECF No. 82-12.

[73] ECF No. 82-10 at 3; ECF No. 82-12 at 2–6.

[74] *Mullenix*, 136 S. Ct. at 309 (quoting *Haugen v. Brosseau*, 543 U.S. 194, 201 (2004) (per curiam)).

located a case that squarely covers the alleged conduct and context of this case, I find that defendants are entitled to qualified immunity on Count V.

### c.    Count VI: Fourteenth Amendment equal protection

Johnson alleges that he was denied equal protection under the law in violation of the Fourteenth Amendment when wardens Jo Gentry, Isidro Baca, Dwight Neven, Renee Baker, and Brian Williams; NDOC director James Cox; and chaplains Julio Calderin and Johnny Youngblood denied Muslim prisoners the ability to purchase and possess scented prayer oil but allowed Christian prisoners to do so.[75]  As discussed more fully below, I summarily adjudicate this claim in the defendants' favor because Johnson has abandoned it as to all but Chaplain Calderin, and he provides no evidence to show that Calderin actually acted against him.  I do not, therefore, reach the defendants' argument that they are entitled to qualified immunity on this claim.

### 3.    Motion for summary judgment on Count I [ECF No. 85]

Johnson claims in Count I that survived screening are that his Eighth-Amendment rights were violated when: (1) he was not provided with lunch or dinner on four consecutive days; (2) he was not provided with lunch on two days; (3) his dinners were poisoned on three days; and (4) he was refused a refill for his hypertension medication.[76]  Defendants move for summary judgment on the entirety of this claim.[77]

"[T]here are two parts to the test of whether an alleged deprivation is cruel and unusual punishment."[78]  "The first part of the test is objective: Was the deprivation sufficiently serious? The second part is subjective: did the officials act with a sufficiently culpable state of mind."[79] In deciding whether a prisoner's allegations meet the objective prong of the test, courts must

---

[75] ECF No. 48 at 10.

[76] *Id.* at 6–7, ¶¶ 5–6, 9–12.

[77] ECF No. 85.

[78] *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993).

[79] *Id.*

consider the "circumstances, nature, and duration of a deprivation . . . ."[80]  "[M]odest

deprivations can . . . form the objective basis of a violation, but only if such deprivations are

lengthy or ongoing."[81]  "[T]o act with deliberate indifference, an official must have actual

knowledge of an excessive risk to inmate health or safety and must deliberately disregard that

risk."  This requires the prisoner to "show that the defendant officials had actual knowledge of

. . . [his] basic human needs and deliberately refused to meet those needs."[82]  "Whether an

official possessed such knowledge 'is a question of fact subject to demonstration in the usual

ways, including inference from circumstantial evidence . . . ."[83]

### a.    Adequate edible food

I begin with whether this alleged deprivation was sufficiently serious.  Johnson testified

that he was denied 53 meals while he was incarcerated at ESP.[84]  He explains that cook Luis

Lopez, warden Renee Baker, and corrections officers Andrew Silverstein and Brandon Lawrence

failed to provide him with lunch and dinner on October 1–4, 2014,[85] failed to provide him with

lunch on October 21 and 28, 2014; and poisoned his dinner on October 4, 29, and 31, 2014.[86]

Defendants provide evidence to refute Johnson's testimony.  The record shows that the actual

conditions that Johnson was subjected to are "disputed questions of material fact that cannot be

resolved at summary judgment."[87]  It is a close call but I find that, if believed, Johnson's

---

[80] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

[81] *Id.* at 732.

[82] *Id.* at 734.

[83] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

[84] ECF No. 82-5 at 6–13 (14:4–42:7 of the transcript).

[85] ECF No. 48 at 6–7, ¶¶ 5–6, 10–12.  Johnson alleges this claim against Michael Koehn, too, but that person is not among the defendants that Johnsons lists, and he provides no allegations identifying Koehn or specifying how that defendant contributed to his alleged constitutional deprivations.  Johnson identified Michael Koehn as a "doctor" in his first-amended complaint, ECF No. 9 at 3, but that pleading was superseded and replaced with his second-amended complaint.  For these reasons, I dismiss all claims against Michael Koehn.

[86] ECF No. 48 at 6–7, ¶¶ 5, 10–12.

[87] *See Johnson*, 217 F.3d at 732.

evidence would establish deprivations that are sufficiently serious to satisfy the objective component of a claim under the Eighth Amendment because they concern days-long withholding of adequate or edible food, a basic human need.[88]

The next question is whether Johnson has demonstrated that the defendants act with sufficiently culpable states of mind. There is no evidence about Koehn's alleged involvement. The evidence shows that Baker and Lopez were made aware of Johnson's alleged conditions, but there is no evidence that the conditions continued after they were notified.[89] Johnson's testimony that he filed kites and grievances with Baker and Lopez, and that both defendants responded, is not sufficient to show that either defendant knew of *and disregarded* Johnson's conditions of confinement. Johnson's testimony that Silverstein threatened to tamper with his food, and that green fluid appeared in his food shortly thereafter, is circumstantial evidence that Silverstein intentionally imposed that condition on Johnson. Johnson's testimony that Lawrence refused to deliver his meals even after he informally complained to Lawrence about not getting his meals is circumstantial evidence that Lawrence either deliberately ignored or intentionally imposed that condition on Johnson. Whether Silverstein and Lawrence had culpable states of mind is genuinely disputed. I therefore grant defendants' motion for summary judgment on Count I as to Koehn, Baker, and Lopez, but I deny it as to Silverstein and Lawrence.

### b.    *Medical needs*

Johnson alleges that wardens Dwight Neven and Brian Williams and NDOC director James Cox refused to refill his hypertension medication from November 30, 2014, until December 30, 2016.[90] Johnson testified that he is prescribed medication for hypertension and

---

[88] *See id.* at 731–32 (explaining that, "[t]he more basic the need, the shorter time it can be withheld" and finding evidence that prisoners did not receive adequate edible food and water and access to toilets for four days was sufficient (internal quotation marks and quoted reference omitted)).

[89] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that, for a supervisor to be liable for constitutional violations of her subordinates under § 1983, she must have "participated in or directed the violations, or knew of the violations and failed to act to prevent them").

[90] ECF No. 48 at 6–7, ¶¶ 9, 12.

that he is allowed to carry a 30-day supply on his person at all times.[91]  He explains that the way the procedure works is that, 20–25 days after receiving his medication, he submits a kite for a refill and typically gets a 30-day refill a couple of days later.[92]  According to Johnson, he was required to—and did—submit the refill-kite to "medical."[93]  Johnson says that he submitted a kite to have his medication refilled, but that these "prison officials refused to refill it."[94]

Johnson testified that Cox knew of his need for hypertension medication, and that he was being denied that medication, "through grievances."[95]  But there is no evidence that these grievances were directed to Cox or that he was made aware of them.  Johnson testified that Cox "never reached out to me to come visit me or anything like that.  So, yeah, I wasn't able to have contact with him because he never reached out to me."[96]

Johnson provides a copy of a first-level grievance that he filed at HDSP in March 2015 stating that he filed an informal-level grievance about the lack of refill for his hypertension medication that had not been addressed and he is still without the medication.[97]  He also provides a copy of a second-level grievance that he filed at HDSP in April 2015 stating that he has been denied his hypertension medication for four months.[98]  Defendants' evidence shows that Johnson was told to resubmit his first-level grievance "at the informal level for a review of [his] allegations" because there was no record of his having filed an informal-level grievance on this issue.[99]  And when Johnson filed a second-level grievance instead, he was again told to

_____

[91] ECF No. 85-2 at 13–14 (44:19–45:16 of the transcript).

[92] *Id.*

[93] *Id.* at 14 (45:17–46:4 of the transcript).

[94] *Id.*

[95] *Id.* at 11 (34:22–36:07 of the transcript).

[96] *Id.* at 14 (48:1–12 of the transcript).

[97] ECF No. 93-1 at 50.

[98] *Id.* at 47.

[99] ECF No. 87-3 at 2.

"[r]esubmit [his] grievance at the informal level for a review of [his] allegations."[100]  There is no

evidence that either grievance was directed to Neven or that he was made aware of either or the

alleged conditions of Johnson's confinement.  Nor is there any evidence that Neven disregarded

those conditions.

Johnson seems to testify that he filed grievances and kites about this issue while he was at

SDCC, too.[101]  But there is no evidence that these kites or grievances were directed to Williams

or that he was aware of them or the alleged conditions of Johnson's confinement.  Nor is there

any evidence that Cox disregarded those conditions.  Johnson has failed to create a triable

dispute as to whether any of these defendants knew about and disregarded his conditions of

confinement.  I therefore grant summary judgment in defendants' favor on Count I.

### 4.     Motions for summary judgment on Count II [ECF Nos. 60, 78, 84]

The parties filed competing motions for summary judgment on Count II,[102] in which

Johnson alleges that some of the defendants violated the First Amendment and the RLUIPA

when they: (1) prohibited prisoners and faith groups from possessing scented oil; (2) failed to

bring his Ramadan meals at least 15 minutes before dawn on 11 days in 2014; and (3) and denied

him his Eid al-Fitr feast in 2014.

I do not address Johnson's allegation about being denied the Eid al-Fitr feast in 2014

because neither side really addresses it in their competing summary-judgment motions.  I have

already found that the defendants are entitled to qualified immunity on the first two allegations,

so this leaves Johnson's official-capacity claim for injunctive relief requiring prison officials to

allow faith groups and prisoners to possess scented oils and deliver Ramadan meals before dawn.

A recent amendment to the NDOC's policy now allows faith groups to possess scented oils.[103]

---

[100] *Id.*

[101] ECF No. 82-5 at 14-15 (48:23–49:05).

[102] ECF Nos. 60, 78, 84.

[103] ECF No. 84-1 at 3 (As amended, the NDOC's policy now includes, among "allowable items common to all faith groups[,]" "[n]on-flammable, non-toxic anointing oil, not to exceed six (6) 1 ounce plastic bottles available from the Canteen or an approved outside vendor only.  Must obtain pre-approval from the RRT prior to obtaining scented oils.  For group use only, to be stored under control of the Chaplain or brought in by volunteers for use in services, and taken out

The new policy moots all but Johnson's request for an injunction requiring prison officials to allow prisoners to personally possess scented oils in their cells and to deliver Ramadan meals before dawn.

"A person asserting a free[-]exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion."[104] "'A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"[105] "The right to exercise religious practices and beliefs does not terminate at the prison door, but a prisoner's right to free exercise of religion is necessarily limited by the fact of incarceration . . . ."[106] "[A]lleged infringements of prisoners' free exercise rights" are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."[107] "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'"[108]

RLUIPA provides that no state may impose a "substantial burden" on a prisoner's exercise of religion unless the action or policy in question provides the least restrictive means of serving a compelling governmental interest.[109] The plaintiff bears the burden of coming forward

---

after the service.") (emphasis omitted)); *see Chernetsky v. Nevada*, 705 Fed. Appx 658, 659 (9th Cir. Dec. 11, 2017) (explaining that, after the AR 810 changes, [t]he manual now lists '[n]on-flammable, non-toxic anointing oil' as an allowed 'item[ ] of Group Religious Property' for 'all Faith Groups.'").

[104] *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

[105] *Id.* at 1031–32 (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

[106] *Id.* at 1032 (quotation marks, quoted references, and brackets omitted).

[107] *Id.* (quotation marks omitted) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

[108] *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[109] 42 U.S.C. § 2000cc–1(a).

with evidence demonstrating that the state's action or policy constitutes a substantial burden on his exercise of religion.[110]

The religious exercises in question here are the physical act of putting scented oil on while praying five times a day and eating Ramadan meals before dawn. There is no dispute that Johnson's religious beliefs on these points are sincerely held. ESP's policy ensures that Ramadan meals are delivered before sunrise. The record is not sufficiently developed for me to determine if this policy, in effect, ensures that the meals are delivered before dawn, too.[111] Also not clear is the extent of the burden that this before-dawn accommodation will have on the prison and if there are less restrictive alternatives. The same is true for the NDOC's policy of prohibiting prisoners from possessing scented oils in their cells. I therefore deny the parties' competing motions for summary judgment on Count II.

### 5. Motions for summary judgment on Count V[112] [ECF Nos. 82, 90]

The parties filed competing motions for summary judgment on Count V,[113] in which Johnson alleges that Baker denied him access to the courts because the ESP's library and Johnson's access to it were both inadequate, and this caused one of his civil cases to be dismissed.[114] The Supreme Court refers to right-of-access claims like this as "backward" reaching.[115] The fundamental element of a backward-reaching right-of-access claim is that the plaintiff suffered an actual injury, i.e., that litigation on the underlying claim "ended poorly," or

---

[110] *Warsoldier v. Woodford*, 418 F.3d 989, 994–95 (9th Cir. 2005).

[111] Johnson testifies that his religion requires him to cease eating before any light of the sun can be seen in the sky. It is unclear if he means astronomical dawn, nautical dawn, or civil dawn. The time when these events occur and how long they last depend on the time of the year and the observer's latitude. I infer from Johnson's testimony that he is seeking to have his meals delivered during the night, before any version of dawn happens.

[112] Johnson identifies his third claim as "Count V." ECF No. 48 at 9. There is no Count III or IV.

[113] ECF Nos. 82, 90.

[114] ECF No. 48 at 9, ¶ 17.

[115] *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002) (defining and describing the two types of right-of-access cases—forward or backward reaching).

could not have commenced, or could have produced a remedy subsequently unobtainable."[116]
"Like any other element of an access claim, the underlying cause of action and its lost remedy
must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."[117]

Johnson does not do this—he vaguely alleges that one of his civil cases was
dismissed[118]—but defendants were able to pinpoint the case in question based on Johnson's
deposition testimony: *Johnson v. Baker*, Case No. 2:13cv273 (D. Nev.).[119]  In that case, Johnson
alleged claims under the Eighth and Fourteenth Amendments based on prison officials' alleged
deliberate indifference to his health and safety needs.  Johnson wanted—but the prison doctor
and other officials refused to provide him—a cane or wheelchair, pain medication, and more
mental-health counseling.[120]  Johnson moved for leave to amend his complaint in that case,
which the court granted.[121]  The court then screened Johnson's first-amended complaint and,
finding that his claims fall only under the Eighth Amendment but were not adequately pled, it
dismissed Johnson's Fourteenth Amendment claims with prejudice and dismissed his Eighth
Amendment claims with leave to amend.[122]  Johnson then filed a second-amended complaint,
which the court also screened and dismissed.[123]  The court explained that Johnson's allegations
that prison officials refused to issue him either a cane or wheelchair and pain medication were
already alleged in two other cases that Johnson had filed, so it dismissed those claims as

---

[116] *Id.* at 414.

[117] *Id.* at 416.

[118] ECF No. 48 at 9.

[119] ECF No. 82 at 4–7.

[120] *Johnson v. Baker*, Case No. 13cv273, at ECF No. 1 (D. Nev.).

[121] *Id.* at ECF Nos. 5 (motion to amend), 11 (screening order).

[122] *Id.* at ECF No. 11.

[123] *Id.* at ECF Nos. 14 (second-amended complaint), 19 (screening order).

redundant.[124]  Johnson ultimately settled those claims in yet another case[125]—he responds that he received $26,000 for those allegations.[126]  As to Johnson's allegations about his mental-health needs, the court found that they constituted "[a] difference of opinion over the appropriate course of treatment [and] do[ ] not amount to deliberate indifference."[127]

So, that litigation "ended poorly" for Johnson because the facts that he pled negated his claim that the prison doctor was deliberately indifferent about his mental-health needs. According to Johnson's allegations, the prison doctor was aware of his mental-health needs and prescribed a course of treatment to address them; Johnson simply disagreed with the prescribed treatment.  Based on this record, I cannot conclude that Johnson has met his burden to identify a nonfrivoulous, arguable underlying cause of action and remedy that he lost as a result of his access to, and contents of, the ESP's law library.  I therefore grant summary judgment in favor of Baker and against Johnson on Count V.

**6.      Motion for summary judgment on Count VI[128] [ECF No. 83]**

Johnson alleges in Count VI that he was denied equal protection under the law in violation of the Fourteenth Amendment when wardens Jo Gentry, Isidro Baca, Dwight Neven, Renee Baker, and Brian Williams; NDOC director James Cox; and chaplains Julio Calderin and Johnny Youngblood denied Muslim prisoners the ability to purchase and possess scented prayer oil but allowed Christian prisoners to do so.[129]  Defendants argue that this claim fails for numerous reasons, including because Johnson testified that he does not have knowledge of *any* prisoners purchasing or possessing scented oils at three of the state prisons that he was

---

[124] *Id.* at ECF No. 19 at 1 (discussing *Johnson v. Moore*, Case No. 3:14-cv-303 (D. Nev.) and *Johnson v. Cox*, Case No. 3:14-213 (D. Nev.)).

[125] *Johnson v. Nguyen*, Case No. 3:12-cv-538, at ECF Nos. 180 (minutes of proceeding), 182 (order granting stipulation to dismiss with prejudice due to settlement) (D. Nev.).

[126] ECF No. 89 at 2.

[127] *Johnson v. Baker*, 13cv273, at ECF No. 19 at 2.

[128] Johnson identifies his fourth claim as "Count VI."  ECF No. 48 at 10.

[129] ECF No. 48 at 10.

incarcerated at, his evidence about the fourth is fatally vague, and there is no evidence that Johnson administratively exhausted this issue.[130] It does not appear that Johnson responded to this motion.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."[131] Johnson has not demonstrated that any of the defendants acted against him with an intent or purpose to discriminate against him based on his status as a devout Muslim.

The unrefuted evidence shows that, for all times relevant to this claim, it was the NDOC's policy that no prisoner, "regardless of faith or lack thereof[,]" was "permitted to possess any oils other than unscented baby oil" that could "be purchased at any prison canteen store."[132] This policy was contained in Administrative Regulation 810 and meant that no prisoner was permitted to possess scented oils either as personal property or religious property that would be kept in the chapel.[133] Johnson alleges that, despite this administrative regulation, the defendants allowed Christian prisoners to purchase and possess scented prayer oils during this time but denied this ability to Muslim prisoners.[134] There is, however, no evidence in the record to support this allegation at three of the institutions that Johnson was incarcerated in. When asked in deposition if he had "ever know[n] non-Muslim inmates to possess scented oils in NNCC[,]" Johnson answered "No."[135] For the same question about ESP and SDCC, Johnson

---

[130] ECF No. 83.

[131] *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

[132] *See, e.g.,* ECF No. 83-13 at 3, ¶ 7; ECF No. 83-8 at 3, ¶ 15; ECF No. 83-11 at 3, ¶ 10; ECF No. 83-12 at 3, ¶ 11.

[133] ECF No. 83-11 at 3, ¶ 15; ECF No. 83-1 at 6 (copy of Administrative Regulation 810 stating that "[s]tandard baby oil (mineral oil) available from the Canteen only" is the only "[o]il, anointing oil" "allowable . . . to all faith groups" (emphasis omitted)).

[134] ECF No. 48 at 10.

[135] ECF No. 82-5 at 26 (95:7–11 of the transcript).

answered "No."[136]  So, Johnson has no evidence to support his allegation that Cox, Baker, Williams, Gentry, Baca, or Youngblood acted against him at all, let alone on the basis that he is a Muslim.

This leaves Johnson's allegations against HDSP warden Neven and HDSP chaplain Calderin.  Johnson offers no evidence to show that Neven acted at all, let alone in a discriminatory manner.  As for Calderin, Johnson testified that "from around 2010 to 2012 here at HDSP I witnessed Chaplain Julio Calderin allowing inmates Rich and other Christian inmates to purchase and possess scented Islamic prayer oil and have it stored in the chapel.  The HDSP chapel and inside of their cells, I witnessed it."[137]  Johnson identifies the prisoners who were allowed to purchase and possess scented prayer oil as "Rick" and "G-One."[138]  He believes that both men are "Document Christians."[139]  He states that he saw the men "go to the chapel, get ounces at a time because Chaplain Julio Calderin kept a pound of scented Islamic prayer oil in the chapel and then he would give them an ounce or two at a time to carry on their person and/or inside of their cells and I witnessed it.  And, in fact, purchased some off these inmates so I can have a little scented Islamic prayer oils to make my prayer with."[140]  Even when viewed in a light most favorable to Johnson, the evidence does not show that Calderin acted against Johnson at all, let alone intentionally discriminated against him on the basis of his Islamic faith.  The defendants are therefore entitled to summary judgment in their favor on Count VI.

. . .

. . .

---

[136] *Id.* (95:24–96:2 of the transcript).

[137] *Id.* at 26 (93:5–16 of the transcript).

[138] *Id.* at 25–6 (92:19–98:7 of the transcript).

[139] *Id.* at 26 (95:2–6 of the transcript).

[140] *Id.* (94:1–11 of the transcript).

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that:

- Defendants' motion to dismiss **[ECF No. 49] is CONSTRUED** as a motion to strike under FRCP 12(f) and **GRANTED**.  All claims against Nissel Young or N. Young are **STRICKEN** from Johnson's second-amended complaint.

- Defendants' motion to dismiss **[ECF No. 55] is GRANTED in part: Johnson's official-capacity claims are limited to injunctive relief and DISMISSED with prejudice if they seek legal relief**.  The motion is also **CONSTRUED in part** as a motion to strike under FRCP 12(f) and **GRANTED**.  All claims about hair in food or low-sodium-diet food are **STRICKEN** from Johnson's second-amended complaint.  The motion is **DENIED** in all other respects.

- Johnson's motion to quash the information or demurrer **[ECF No. 66] is DENIED**.

- Defendants' motion for leave to file excess pages **[ECF No. 72] is GRANTED**.

- Johnson's motion for oral argument **[ECF No. 103] is DENIED**.

- Defendants' motion for partial summary judgment on Count I **[ECF No. 85] is GRANTED in part as stated in this order**.  The motion is **DENIED** in all other respects.  Only Johnson's claim of inadequate edible food against Brandon Lawrence and Andrew Silverstein remains for further proceedings.

- Defendants' motion for summary judgment on Count II **[ECF No. 84]** is **GRANTED in part as stated in this order**. The motion is **DENIED** in all other respects.  Only Johnson's claim that he was denied his Eid al-Fitr feast in 2014 and his request for injunctive relief for personal possession of scented oils and pre-dawn delivery of Ramadan meals remains for further proceedings.

- Johnson's motions for summary judgment on Count II **[ECF Nos. 60, 78] are DENIED**.

- Defendants' motion for summary judgment on Count V **[ECF No. 82] is GRANTED**.

- Johnson's motion for summary judgment on Count V **[ECF No. 90] is DENIED**.

- Defendants' motion for summary judgment on Count VI **[ECF No. 83] is GRANTED**.

IT IS FURTHER ORDERED that this matter is referred to a magistrate judge for a mandatory settlement conference.

Dated: March 30, 2018

_____
U.S. District Judge Jennifer A. Dorsey