UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Lausteveion Johnson,<br><br>    Plaintiff<br><br>v.<br><br>Luis Lopez, et al.,<br><br>    Defendants | Case No.: 2:15-cv-00884-JAD-NJK<br><br>**Findings of Fact, Conclusions of Law, and Order Following Bench Trial; Judgment** |

Incarcerated plaintiff Lausteveion Johnson sued several Nevada state prison officials under 42 U.S.C. § 1983, alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). After I ruled on the parties' summary-judgment motions, only two of Johnson's First Amendment and RLUIPA claims remained: first, that he was denied pre-dawn Ramadan meals and the Eid al-Fitr feast in 2014 and, second, that he was entitled to an injunction allowing him to keep scented prayer oil in his cell.

This case proceeded to a bench trial on February 20, 2020, on those two claims. I entered judgment on the record in favor of the defendants on Johnson's first claim. After reviewing the parties' trial briefs, proposed findings of fact and conclusions of law, and exhibits, along with the trial transcript and my notes taken during the trial, I now enter judgment in favor of Johnson and against the defendants on Johnson's final claim.

**Background**

Johnson has been a prisoner in the Nevada Department of Corrections (NDOC) since 2003 and a practicing Muslim since 2008. Part of the Muslim religious practice is to pray five times each day. Before prayer, Muslims are to purify themselves by washing with water, putting

on clean clothing, and anointing themselves with a few drops of scented oil.  NDOC made scented oils available to Muslim inmates, but anyone wishing to use them may only do so at the weekly group prayer service.  Inmates purchase the oil in one-ounce bottles, which are then delivered to the institution's chaplain, who keeps them in the office and administers them at the appointed time.  Inmates like Johnson who want to use the scented oils for each of their five daily prayers cannot do so because they are not allowed to access the chapel outside of their faith group's designated time, and NDOC does not allow inmates to keep scented oils in their cells.  But inmates are allowed to purchase fourteen-ounce bottles of unscented baby oil to keep in their cells, as well as scented items like soap and laundry products.

Johnson challenges this policy under RLUIPA, arguing that it substantially burdens his religious exercise.  He requests an injunction allowing him to keep a small amount of oil in his cell for use with his daily prayers.

**Discussion**

**A.    RLUIPA Standard**

The United States Supreme Court has held that inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[1]  But the Supreme Court has also recognized that certain limitations on an inmate's free-exercise rights "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."[2]  A prison regulation that impinges on inmates' constitutional rights must be

---

[1] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).
[2] *Id.*

2

reasonably related to a legitimate penological interest.[3]  At the same time, RLUIPA prohibits the imposition of a substantial burden on prisoners' religious exercise "unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering" that interest.[4]

**B.     NDOC's policy places a substantial burden on Johnson's religious exercise.**

As a threshold matter, an inmate suing under RLUIPA bears the burden of proving that (1) the prison's actions implicate his religious exercise, and (2) the prison's actions substantially burden that exercise.[5]  Religious exercise is broadly defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[6]  But RLUIPA does not define the term "substantial burden."[7]  A substantial burden "must impose a significantly great restriction or onus."[8]  "[A]n outright ban on a particular religious exercise is a substantial burden on that religious exercise."[9]

There is no dispute that the use of scented oils is a religious exercise.  And Johnson has shown that not having access to scented oils for his daily prayers is a substantial burden on his religious exercise.  By not allowing Johnson to keep scented oil in his cell, NDOC is preventing him from engaging in an essential part of his Muslim practice.  At trial, NDOC argued that Johnson is still allowed to pray five times each day and anoint himself with unscented baby oil if

---

[3] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[4] 42 U.S.C. § 2000cc-1(a)(1)–(2).
[5] *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).
[6] *Id.* at 860 (quoting 42 U.S.C. § 2000cc-5(7)(A)).
[7] *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).
[8] *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).
[9] *Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008).

3

he wishes. But this argument missed the significance of the *scented* oils. As Johnson testified, the unscented oil is not an adequate alternative because his sincerely held belief requires him to anoint himself with scented oil as part of purifying himself before his prayers. Johnson acknowledged that he was allowed to pray, but not being allowed to use the scented oils while doing so is not the same. NDOC's policy operates as an outright ban on this specific religious exercise for Johnson, so it is a substantial burden.

### C. NDOC's policy is not the least restrictive means to achieve a compelling state interest.

Once an inmate demonstrates that a prison policy substantially burdens his religious exercise, the burden shifts to the defendant to show that its policy is the least restrictive means of serving a compelling government interest.[10] Given RLUIPA's emphasis on protecting religious liberty, this burden requires a "more focused inquiry" into a policy's impact on a particular person rather than looking at more "broadly formulated interes[ts]."[11] Regardless of the compelling interest a prison identifies, defendants in these types of cases are given some degree of deference when articulating that interest—after all, "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise."[12] This deference, however, "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard."[13]

The government argued that the ban on keeping scented oil in individual cells serves several interests that all center around maintaining order and security at the prison:

---

[10] *Holt*, 135 S. Ct. at 863 (citing 42 U.S.C. § 2000cc-1(a)).
[11] *Id.*
[12] *Holt*, 135 S. Ct. at 864.
[13] *Id.*

(1) minimizing contraband because the oils can be used to cover the scent of drugs and other restricted substances; (2) promoting good hygiene by preventing inmates from using the scented oil to cover body odor; and (3) maintaining safety because oil is slippery, can be heated and used as a weapon, or would be seen as valuable in the prison bartering system.  Maintaining institutional security, especially by minimizing contraband, is a compelling government interest.[14]

But the defense has not shown that an outright ban on Johnson keeping a small amount of scented oil in his cell is the least restrictive means of achieving that interest.  When a prisoner challenges the justifications for a policy that substantially burdens religious exercise, "prison officials *must* set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner."[15]  The defense did not do so with at least one of Johnson's proposed alternatives in this case.

Johnson proposed several alternatives to the outright ban on keeping the full one-ounce bottles of scented oil in his cell.  The government showed that the first—allowing Johnson access to the chapel to have the chaplain administer the oils to him five times each day—is not feasible because the chaplain is too busy.  It also showed that having corrections officers administer the oil to Johnson every day is likely not a feasible alternative.  But Johnson's final proposal of allowing him to keep no more than a half ounce of scented oil in his cell, while the full one-ounce bottle would remain in the chapel under the chaplain's supervision, was not refuted by the defense.

---

[14] *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

[15] *Warsoldier*, 418 F.3d at 1000 (citation omitted).

5

The problem is that this alternative allows Johnson to keep oil in his cell, which the defense argued would lead to a cavalcade of negative consequences. The government witnesses testified that they believed that the oil would become valuable for bartering but admitted that many items available for prisoners to purchase and keep in their cells are similarly valuable. While the government mused of the oils' potential use as tattoo ink, both Associate Warden Jennifer Nash and Johnson testified that the oils are clear or very lightly colored, and there is no evidence in the record that the oils contain dye or carry enough natural color to turn them into tattoo ink. The government witnesses also testified that they believed the scent of the oil was powerful enough to cover the scent of contraband, but the defense did not present detailed evidence of the quantity needed to cover the smell of drugs or alcohol. According to Johnson, one would need to "drench" his cell using much more than the half ounce he is requesting, in order to cover the smell of any contraband.

And the bulk of the government's concerns about just one inmate keeping oil in his cell pale when viewed in light of the risks inherent in the other items that inmates are allowed to keep in their cells. Inmates may purchase and keep fourteen-ounce bottles of baby oil in their cells, and the defense didn't explain how that policy does not carry the same safety concerns about slipperiness of the oil or its ability to be weaponized as the scented prayer oil does. Similarly, inmates may purchase and keep many scented products in their cells, like Irish Spring soap, Tide laundry detergent, Bounce dryer sheets, cocoa butter lotion, various scents of deodorant, and cosmetics like nail polish. These are all strong scents and are available to purchase in larger quantities than half an ounce. If an inmate wanted to cover the scent of body odor or contraband, there are several products already available to him to do so. The government offered no evidence showing that adding half an ounce of scented prayer oil, monitored by the prison

chaplain, would increase this risk.  The government also emphasized that corrections officers use their sense of smell to identify and locate contraband, and the oils could interfere with that duty.  But it logically follows that corrections officers can familiarize themselves with the scent of the oils and what it would smell like if a cell were drenched in them.  Common sense would suggest that there is no above-board reason to do so when the oil's intended use is to apply a few drops to one's body before prayer, and an officer would know to use his other senses to check for contraband if he discovered the oil being used inappropriately.

Allowing Johnson to have the oil dispensed by the chaplain in half-ounce quantities could mitigate many of the prison's concerns.  It would let the chaplain keep track of how much oil Johnson is going through, reducing the risk of improper use and bartering.  Some witnesses expressed concern about using the small oil bottles to smuggle contraband, especially if they are purchased from unknown sources, but the process for ordering would remain the same and the chaplain would still keep the full bottle.  The oil would simply be portioned out in small quantities and monitored for Johnson to use in his daily prayers in his cell.  If Johnson were to use too much or use it for an improper purpose, it should be readily apparent to the chaplain.

The government fell short of its burden to present detailed evidence refuting this potential alternative.  Accordingly, it failed to show that banning Johnson from keeping a small amount of scented oil in his cell is the least restrictive means to achieve its interest in institutional security.  I therefore find in Johnson's favor on this claim.

## Conclusion

Based on these findings of fact and conclusions of law, as well as the findings of fact and conclusions of law I made on the record, and with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

- Judgment is entered in favor of the defendants Luis Lopez, Isidro Baca, Brandon Lawrence, and James Cox, and against plaintiff Johnson on Johnson's meal-based claim; but

- Judgment is entered in favor of the plaintiff and against the defendants J. Youngblood, James Cox, Renee Baker, Brian Williams, Jo Gentry, Isidro Baca, and Julio Calderon (in their official capacities only) on Johnson's scented-prayer-oil claim. The defendants must allow Johnson to possess no more than a half ounce of scented oil in his cell for personal use with his prayers, administered by the institution's chaplain at the weekly Muslim group prayer service.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: October 9, 2020

_____
U.S. District Judge Jennifer A. Dorsey