UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Lausteveion Johnson,

    Plaintiff

v.

Luis Lopez, et al.,

    Defendants

Case No.: 2:15-cv-00884-JAD-NJK

**Order Denying Motion for Contempt**

[ECF No. 182]

    Lausteveion Johnson moves for a finding of contempt against prison officials for violating this court's 2020 injunction requiring Johnson's prison to supply him with scented oils for use in religious prayer. Because Johnson has not presented clear and convincing evidence that the defendants violated the injunction, I deny his motion.

**Background**

**A.    The court's injunction**

    At the February 2020 trial of this civil-rights action, incarcerated plaintiff Lausteveion Johnson prevailed on his claim that Nevada Department of Corrections (NDOC) officials violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) by preventing him from keeping scented prayer oil in his cell. The resulting judgment "entered in favor of the plaintiff and against the defendants J. Youngblood, James Cox, Renee Baker, Brian Williams, Jo Gentry, Isidro Baca, and Julio Calderon (in their official capacities only)" states that "the defendants must allow Johnson to possess no more than a half ounce of scented oil in his cell for personal use with his prayers, administered by the institution's chaplain at the weekly

Muslim group prayer service."[1]  The judgment was affirmed on appeal in a published Ninth Circuit opinion last year.[2]

**B.    Johnson's contempt motion**

On August 25, 2022, Johnson filed a "Motion for Finding of Contempt," arguing that, despite his success in this litigation, NDOC reinstated the complete ban of scented oils "in pure defiance" of this court's order and the Ninth Circuit's opinion.[3]  He asks this court to hold the defendants in contempt, order compliance with the injunction, and award him compensatory damages for each prayer he has had to perform without scented oil.  The defendants failed to respond, so I issued an order to show cause "why the defendants should not be held in contempt of the court's injunctive-relief judgment."[4]

Defendants responded, conceding that, while NDOC did stop selling scented oils from March through September 2022, the injunctive relief granted by this court did not require that Johnson be able to *purchase* the oils—it only required that he be allowed to *possess* them—and submitting a declaration from his prison's[5] chaplain stating that he continued giving Johnson oils while they were not for sale.[6]  In his reply, Johnson took issue with the chaplain's declaration, contending that the chaplain gave him only unscented baby oil during that time, in direct

---

[1] ECF Nos. 172, 173.

[2] ECF No. 178; *Johnson v. Baker*, 23 F.4th 1209, 1213 (9th Cir. 2022).

[3] ECF No. 182.

[4] ECF No. 183 at 2.

[5] Johnson is housed at the Northern Nevada Correctional Center, a prison within the NDOC system.  To avoid confusion between NNCC (the prison) and NDOC (Nevada's prison department), I refer to the Northern Nevada Correctional Center as "the prison" throughout this order.

[6] ECF No. 186 at 3–4.

2

contravention of this court's and the Ninth Circuit's finding that Johnson believed *scented* oils were crucial to his daily prayers.[7]

## C. Supplemental briefing

On March 14, 2023, I issued an order finding that all parties agree that NDOC resumed selling scented oils in late 2022 and thus that any request for coercive relief to ensure continued compliance with the injunction was moot.[8] But because Johnson also sought compensatory relief for NDOC's alleged contempt, I considered whether the prison violated the injunction between March and September 2022 and noted that the chaplain "certainly omits the word 'scented' from his attestation that Johnson received 'oils'" during that time period.[9] So I ordered NDOC to file a supplemental brief responding to Johnson's accusation that the chaplain gave him unscented oil and to brief whether compensatory damages are available to Johnson if I find that the prison violated the injunctive order between March and September.[10]

NDOC filed its supplemental brief and attached an updated declaration from the chaplain, which explained that the chaplain did indeed provide Johnson with oils "from a supply of scented religious oils [stored] in the chapel for other inmates to use" and "did not give Johnson baby oil" or "any other type of oil."[11] He stated that "[t]he oil [he] gave Johnson was in official religious oil bottles, of various scents and with various colorations" and those oils "c[a]me from the [prison's] inmate store" and "had been approved for inmate religious use."[12] NDOC also argued that, while Johnson may be entitled to compensatory damages had the injunction been

---

[7] ECF No. 188 at 6–7; *see also* ECF No. 172 at 3–4; *Johnson*, 23 F.4th at 1213.
[8] ECF No. 198 at 3.
[9] *Id.*
[10] *Id.* at 4.
[11] ECF No. 199-3 at 3.
[12] *Id.*

3

violated (though they maintain it wasn't), Johnson did not prove actual damages amounting to (his claimed) $50 per day for the absence of his oils.[13]

In his response to NDOC's supplemental brief, Johnson shares a brand new theory for how the prison system violated his injunction.[14] He concedes that the chaplain gave him oils from a supply of bottles marked "scented" but argues that those labels were false.[15] He explains that inmates who use scented oils for religious purposes are required to keep them at the chapel under the current regulations, preventing Muslim inmates from using the oils during their five daily prayers.[16] So, to circumvent the rule, inmates concocted a scheme by which they would go to religious services hiding two oil bottles: one was empty, the other contained unscented baby oil (which they were allowed to keep in their cells). When the chaplain's attention was elsewhere, the inmates would pour the chapel's scented oils into the empty baby-oil bottle and refill the scented-oil bottle with baby oil, thus allowing them to leave the chapel with scented oil and returning the scented bottles now filled with baby oil. Johnson maintains that it was *those* bottles of secretly substituted unscented baby oil that the chaplain resorted to when Johnson asked for oils to replace the ones he could no longer buy.[17] Thus, Johnson avers, he was given unscented oils in violation of the court's injunction.

---

[13] ECF No. 199 at 4.
[14] ECF No. 201.
[15] *Id.*
[16] *Id.* at 13.
[17] *Id.*

**Discussion**

**A.     Civil-contempt standard**

"Civil contempt . . . consists of a party's disobedience to a specific and definite" court order.[18] "If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt."[19] "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence . . . ."[20] "The district court has wide latitude in determining whether there has been contemptuous defiance of its order."[21]

**B.     Johnson has not shown that the defendants violated the court's injunction.**

  **1.     *NDOC's short-lived decision not to sell scented oils directly to inmates did not violate the court's injunction.***

At this point the parties agree that NDOC stopped selling scented oils at the inmate store from March to September 2022.[22] The defendants explain that NDOC began revising its administrative regulation concerning scented oils in March 2022 to remove "the restriction that oils [must] be kept in the chapel for group use only" and to instead "allow all inmates to keep half[-]ounce bottles of oils on their person in their cells."[23] To prepare for the change, the

---

[18] *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quotation omitted).

[19] *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).

[20] *Inst. of Cetacean Rsch.*, 774 F.3d at 945.

[21] *Hook v. Arizona Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997).

[22] Johnson initially stated that the prison resumed scented-oil sales in November 2022. ECF No. 188 at 6. But the defendants submit evidence that the store resumed sales in September, ECF No. 199-3 at ¶ 21, and Johnson appears to agree in his reply. ECF No. 201 at 2–3. Defendants also submit evidence that Johnson bought oils from the store in October and November 2022. ECF No. 199-2 at 6.

[23] ECF No. 186 at 4.

5

canteen stopped selling one-ounce bottles until the new regulations were implemented and the prison could order half-ounce bottles to sell.[24] But the regulation-revision process took a while, and it had still not been implemented when Johnson filed his contempt motion in August. In September, NDOC began selling one-ounce bottles again.[25]

Johnson initially argued in his motion for contempt that the NDOC's decision to stop selling scented oils amounted to a violation of the court's injunction. It didn't. The injunction specified that "the defendants must allow Johnson to *possess* no more than a half ounce of scented oil in his cell for personal use with his prayers, administered by the institution's chaplain at the weekly Muslim group prayer service."[26] The injunction did not specify how the oils must be purchased; it only detailed the amount Johnson could keep in his cell. So NDOC's decision to stop selling oils for a brief period did not violate the specific and definite contours of the court's injunction, so long as NDOC ensured that Johnson continued receiving scented oils during that time. And the prison did: its chaplain gave Johnson supplies from the store of scented oils maintained in the chapel.[27] So NDOC did not violate the court's injunction merely by pausing the direct sale of scented oils.

### 2. The prison's substitute policy substantially complied with the injunction even if inmate malfeasance led to Johnson receiving baby oil.

Johnson's supplemental response takes issue with the chaplain's statement that he gave Johnson scented oils from the chapel's supply whenever Johnson asked for them: he agrees that the chaplain did indeed give him the chapel's scented oils, but avers that the chapel's oils—

---

[24] *Id.*

[25] *Id.*

[26] ECF Nos. 172, 173 (emphasis added).

[27] *See* ECF No. 199-3.

6

despite being kept in scented-oil bottles of the same ilk as those he was previously able to purchase—were actually filled with baby oil by inmates who clandestinely switched their in-cell baby oil with the chapel's scented oil.  Even if I take Johnson's accusations as true, they do not show by clear and convincing evidence that NDOC violated the injunction.  Johnson admits that the chaplain was not aware of this secret inmate practice of switching out the chapel's scented oils for baby oil.[28]  He only states that he once told the chaplain that the bottles in the chapel "have baby oil in them" and that chaplain responded, "do you still want to use them?"[29]  Johnson responded "Yes!" and continued receiving them every week.[30]  He does not show that the chaplain confirmed Johnson's statement or believed it to be true.  Nor does he show that the chaplain in fact provided oils to him from the same scented-oil bottles that the inmates altered.[31]  Johnson's statements are insufficient to show by clear and convincing evidence that the chaplain—or NDOC and its officials—knew he was giving Johnson oils that did not conform to his religious practices or the court's injunction.

In short, Johnson's new twist does not place the blame on the NDOC, the chaplain, or any other named defendant or prison official.  All he shows is that when NDOC stopped selling scented oils at the canteen, it endeavored to substantially comply with the court's injunction by

---

[28] ECF No. 201 at 11.  Johnson implies that the chaplain should have been curious as to why that store of oils remained in the chapel untouched by the inmates, suggesting that he should have known their contents were altered.  Johnson's speculation is not evidence of the chaplain's knowledge, and there are plenty of reasons why a chaplain may assume that bottles containing religious scented oils would be left by inmates: individuals leaving incarceration, having crises of faith, or getting new oils are just a few.

[29] *Id.* at 12.

[30] ECF No. 201 at 12.

[31] Johnson complains that the chaplain must have stolen oil from other inmates, as the only supply of oils in the chapel were bought and stored there by inmates under the prison's previous policy.  Johnson's contention is purely conjecture and regardless, it does not factor into my determinations because the chaplain is not on trial: whether NDOC complied with the court's injunction is the only issue I decide here.

sending Johnson to the chaplain to receive his mandated weekly allotment of scented oil, but was thwarted by other inmates' actions. Johnson has a high bar to show that the prison failed to comply with the court's injunction by ensuring that he continued receiving scented oils. If Johnson's story is believed, any failure to strictly comply with the injunction was inadvertent and based on the concealed actions of other inmates. I decline to find that the prison violated an injunction because of inmate malfeasance.[32]

**Conclusion**

**IT IS THEREFORE ORDERED** that Lausteveion Johnson's motion for contempt **[ECF No. 182] is DENIED**.

**IT IS FURTHER ORDERED** that Johnson **must update his address with this court by May 30, 2023**, because the court's last order was returned as undeliverable (ECF No. 203). **The Clerk of Court is directed to send this order to Lausteveion Johnson, inmate number 82138, care of Southern Desert Correctional Center**, as the returned mail indicates that is where he is now housed.

_____
U.S. District Judge Jennifer A. Dorsey
May 22, 2023

---

[32] Because I find that NDOC did not violate the court's injunction, I do not address the parties' arguments on whether Johnson has shown entitlement to compensatory damages.